Mr. Wolfe, Representative, Mr. Buchanan. I'm going to please the court. My name is Michael Wolfe on behalf of the appellant and plaintiff, Alice Buchanan. This case is before this court on a retaliation and gender discrimination claims made by Alice Buchanan after she was terminated from a career with the Veterans Administration and their police department. The key issues, and the facts, I'll weave into those rather than reciting them in full. The key issues in this case are really whether or not the trial court erred in denying the retaliation claim and in denying the gender claim in the context of summary judgment. I'd like to begin with addressing the retaliation claim and going through some points on it, particularly focusing on the McDonnell-Douglas factors and looking at those and the evidence that is in the record. To begin with, we are obviously dealing with a protected activity, EEOC claim, and that wasn't an issue. There was an adverse action. That was a termination, not an issue. The first issue came up whether or not there was a causal link between the termination and the EEOC. In this case, the plaintiff, or the VA rather, argued that the EEOC and the termination were not temporally connected and therefore not causally related. In response to their first motion for summary judgment and also in response to the second one, we presented testimony of the VA director, and we presented both direct and circumstantial testimony, and it's important because we started with the direct testimony of the VA director, Joe Battle, who demanded the waiver of the EEOC during informal hearing following the termination, and we believe that it clearly evidenced a bias and a reason being that there was a pending EEOC claim and they wouldn't allow her to test again, which was her right, unless she waived that. We also show some significant, and that's at the record at 445. I'm sorry. You're saying demanding the waiver of an EEOC claim? That's right. But I thought she had an EEOC claim pending. She had an EEOC claim. So he asked her to dismiss her EEOC claim. That's exactly right. All right. And when you say demand the waiver of, that's what you mean? I do. Demand that that be dismissed. Yes, Your Honor. All right. So there's a demand that the pending EEOC be dismissed, and with regard to temporal connection, the EEOC was made in 2010, but very significant. She immediately after that or shortly after that went on workers' compensation, was transferred to another department, and was effectively out of police services. It wasn't until she was recovered and returned to police services that suddenly this condition, which existed, the pending EEOC, became active, became litigated again. She was literally out of sight, out of mind. And when she came in during the administration of Joe Battle, the only thing that separated her from her male counterparts in the police services were her gender and the existence of this EEOC claim. Okay. And this is just my take on it, and others may disagree, but it seems to me this boils down in large part to this whole Exhibit J issue because the tie is she's being asked to waive an EEOC claim in exchange for getting something that she is already entitled to as opposed to getting something she's not already entitled to. And so I'm just very puzzled about this three-ring binder that she describes and the fact that no one else seems to know anything about it. What was the discovery in this case? What did the discovery in this case show about this binder and whether it existed? Because the testimony from the company is, oh, it was all online. Yeah. Thank you, Your Honor. I think that is a huge and significant issue, and I think that the trial court erred, and it was abuse of discretion to exclude Exhibit J. The objection was that there was a lack of authentication to Exhibit J, but two times in the affidavit of Alice Buchanan in her first motion for summary judgment movement and then the second response to the summary judgment, she said that this is a true and correct copy of the policy which was provided to us by Lieutenant Bennett, who was there at the beginning of 2012 and was made a part of our and it was located in the three-ring binders in the security office and was told to them, the employees, as the local standard operating procedure. The significance of this is obviously it says that you're entitled to a second and final turn, which she never got. In order for the VA to succeed in this whole claim, they have to get rid of that Exhibit J. Right, and so did you ask, request remission, admit that Exhibit J is found in a three-ring binder, admit that there is a three-ring binder? I mean, what was the discovery? Because it seems to me like whether there was a three-ring binder or not ought to be a provable fact, and I'm confused about why we seem to have this dissonance between this guy who says everything's online and your client who says there's a three-ring binder. And you're right, Your Honor. We're at the summary judgment stage during this, and we're debating issues of fact on whether it exists there or doesn't exist there. The truth of the matter is this document was submitted during the first motion for summary judgment. It was given to her. There is credible evidence in the form of her testimony. I'm not asking for whether it's credible evidence. I'm asking, this seems like a pretty big deal to me, and it would seem like when you're drafting discovery and doing disclosures and doing all of the discovery that you do before summary judgment, this would have been a part in it. And I'm asking what that showed us. Well, we did ask for copies of their policies and procedures and manuals, and they declined saying it was overly burdensome and refused to do it. We brought motions to compel were unsuccessful in that regard. However, it doesn't change the fact that there is this policy. Let's talk about why they say it doesn't exist or why it should be excluded, and more important, why it is really consistent with the operating policies. Exhibit J was excluded primarily on the evidence of Charlie Donaldson. Charlie Donaldson offered an affidavit in response to the second motion for summary judgment. In that motion, he says, well, this SOP is not a VA policy, and instead we rely on a 1,500-page policy available on computer, which ironically is not available on any open website and was never provided. Charlie Donaldson was accepted as a credible witness, and there is no other evidence regarding why they believe it's not a policy. In fact, the only contrary evidence is that provided by very specific evidence provided by Alice Buchanan that it is a credible policy. And they go to look at Charlie Donaldson's statement, accept it, and it's really important to remember that Charlie Donaldson lacked credibility. The trial court even acknowledged this at footnote 2 on record page 1201, acknowledged that he lacked credibility. Well, despite this lack of credibility, they accepted wholeheartedly Charlie Donaldson's assertion that there never was anything other than this policy. What did he lack credibility on? Well, Charlie Donaldson was the key player in the early efforts to attack or assault and terminate Alice Buchanan. During the time where she was going through the psychological evaluations, we have an e-mail from Charlie Donaldson who basically admits that he gave some bad information to the psychologist who was trying her. He was trying to manipulate the results early on in return for workers' comp. We also have Charlie Donaldson attempting to discipline her when she asked for days off. I'm asking specifically at what point did the district court find him incredible about it? It was a very general lack of credibility statement. That's all of them? That's all of them, yes. Additionally, though, we have— I mean, if credibility is key, then summary judgment is— It shouldn't have been granted. That's correct. And it was on the credibility of Charlie Donaldson that that piece of evidence was excluded on the retaliation claim. Let me also say, also important in this is that the detail which was provided by Alice Buchanan, that is the three-ring binder located in the operating room, this is very consistent with what are known as the 0730 requirements that they maintain local standard operating procedures. It's also— Why can't we just almost drop the point by just simply saying she said there was a policy. He said there wasn't. It's a disputed issue of fact. Nobody resolved it, as Judge Haines has pointed out. It was never really resolved about what the three-ring was and so on. I just say that it's a disputed issue of fact, and you win on that point. Now, what about the other point about the conversations and subject matter of the settlement discussions? You're right, Your Honor. The next issue is whether or not the settlement discussions or the offer of Joe Battle that we'll let you retest, I assume there's a tribal issue of fact now that she is entitled to retest. We'll let you retest, but you must do it in the EEOC. You must dismiss your pending EEOC claim. It's important to remember that that statement was first made during an informal hearing immediately following a termination. It was also renewed, the statement was renewed by Joe Battle in the, without objection, in the Merit System Protection Board hearing, and it was also specifically made in response to a request by Alice Buchanan to have simply that right, which was her, a second test. So we have no, and most significantly, there is no new consideration offered in the context of that. Wait just a minute. How many times are you saying that it was on three different occasions before settlement negotiations began that he said, if you will drop your EEOC charge, we will give you another chance to take the firearms test? There was the one time it was said during the meeting directly with him during the informal hearing. There is then, there's certainly then discussion between the counsel for the VA. This is after that hearing in which it was brought up, but then it's brought up again during the Merit System Protection Board hearing without objection. So this statement exists once here and once on both sides, on the other side, without objection there. So you have, but then there is a point at which I believe the record probably suggests that there was some back and forth after that hearing between counsel and that they've offered. As I read briefs, it was my understanding that she was called in after she was terminated. She had an opportunity to challenge her termination, and she had a meeting with Joe Battle at that point, and that's when he said, well, we could probably resolve this matter. If you would drop your EEOC charges, I would give you another chance to test your shooting ability. And I think that the most important— Now, you're telling me that it was brought up earlier than that as well? No, that's the first time it was brought up during that informal hearing. And then after that occurred, it did go into formal settlement agreements. That's right. With someone else who had authority to settle the case. Joe Battle had no authority to settle the case. That's correct. And then it was raised again without objection in a hearing. But the critical component, as I understand it, is if we spot you, Exhibit J, and say that's valid or at least arguably valid, question of fact, whatever, then you're saying there's no consideration being offered, so it's not really a settlement offer because she already has the right to retest. It's not like if you'll drop your EEOC, we'll pay you $5,000. It's like if you'll drop your EEOC, we'll pay you $5,000. We already owe you. That is precisely it. We also combine that with the evidence of both Alice Buchanan and also with that of Joe Battle, who both of them said they never engaged in settlement themselves. They didn't consider their dialogue to be a settlement. And I think that's significant that when both of the parties don't consider that they're in a settlement discussion, how is it good where there's no new consideration to hoist that upon them as a settlement? Did she have counsel at that point? No, she had a union rep. Was the union rep there for the Battle discussion? The union rep was – I had a hard time even finding him after the fact, so I could not tell you one way or the other. I believe he probably was, though. Well, I guess I'm just wondering would it be – because if she had counsel, of course, you don't make offers of settlement to a representative party without the counsel there and so on. I just wonder, does the union rep work the same way that when there's going to be formal talks like that, that the union rep is supposed to be present? Well, according to the notes that were taken from that meeting, the discussion really directly involved Battle and Alice Buchanan, and the union rep was simply there to observe and watch. That's my impression from the notes from that meeting. The other thing, too, that's significant is both of them denied ever participating in the settlement. But also, let's think about the purpose of 408. That's the reason it was excluded from the trial court. 408 should encourage good-faith settlement offers. I mean, it's public policy, and we weigh it against the use of that as a method to hide behind malformed intent in a retaliation case. It seems to me that the subtleties at the trial court were overwhelming the overall purpose, and that is to attempt to get at a little bit of truth in regard to the course of that. And even without this, now I've said that there's also ‑‑ So to be clear, what you're saying is 408 simply doesn't apply in this context with whatever this discussion was about drop your case and you can retest. Absolutely. Additionally, there was circumstantial evidence outside of that statement itself, which supports the contemporary causal relationship. And I'm specifically referring to the statement that Chief Motley had before she signed the termination letter. That is, yeah, it was something to the effect she was told Buchanan was not a team player. There was also evidence that Buchanan heard from Chief Shuman that they weren't sure if she would tell the truth or be a team player. Okay, I believe you have a red light, Mr. Wolf. Thank you. You've saved some time for rebuttal, and Ms. Williams, we'll hear from you. Thank you, Your Honors. Good morning, and may it please the Court. I am Angela Williams, and I represent the Secretary of the VA. As one would expect, a condition of employment for VA police officers is that they pass and maintain firearms qualification. Alice Buchanan failed that firearms exam, and she was removed from her position because she failed the exam. There was no discrimination or retaliation in this case, and the government respectfully requests that this Court affirm the district court's decision. During the course of my argument, I will address several of the arguments made here, but I will specifically address whether or not Ms. Buchanan made out a prima facie case of gender discrimination, which we contend that she did not because she was neither qualified for her position nor was she treated differently than similarly situated males. In addition, we will argue that Ms. Buchanan failed to establish a causal connection between her protected EEO activity and her removal. Therefore, there was no retaliation. She also failed to establish pretext with respect to the legitimate non-discriminatory reason for her removal. And finally, we would argue that Ms. Buchanan has waived her right to challenge the Court's denial of her motion to alter a man's judgment. I would like to address some of the arguments. If Exhibit J, if we accepted that Exhibit J should have been included or at least should have been treated as a disputed fact and not excluded, do you lose on retaliation or do you have a basis on which you win even with Exhibit J? No, we have a basis on which we win even with Exhibit J, Your Honor, but I would argue in the law and the facts support that the Court correctly concluded that Exhibit J was not reliable. There was much discussion about whether or not this was a weighing of the credibility of the witnesses, but that is exactly what the Court does when it is making a determination as to whether or not evidence is admissible. The District Court, in deciding on summary judgment, can only consider competent summary judgment evidence. But, Counsel, in determining whether or not to grant a motion for summary judgment, one of the questions is whether or not there is a material fact that's disputed. Is that right? With respect to summary judgment, but before we even get to summary judgment, you have to have a record of competent summary judgment evidence. Well, what we have is her contention that she was entitled to a retest based on the standard operating procedure that was found in this manual. That's what she contends. Is that right? Yes. I can't get there yet. There was not a standard operating procedure that allowed her to retest, and this manual, quote, unquote, was a one-page document that only Ms. Buchanan produced. She produced it for the first time. Well, you're telling me why I shouldn't find it credible. But all I'm suggesting is she argues that, as a matter of fact, she was entitled to a retest. You agree that's her argument? That is her argument, but there is nothing that supports that argument, and the Court cannot simply rely on that. Except Exhibit J. Exhibit J is not reliable, Your Honor. The point is she said this is our policy. Your witness says this is not our policy. So you have, on the basis of summary judgment, don't you have to accept her word that it is a legitimate policy if he can't prove that it's not? No, Your Honor, and the reason is this. Again, the Court has to have competent summary judgment evidence. Ms. Buchanan must first authenticate Exhibit J. Okay. But doesn't she create a disputed issue of fact? Hasn't she got competent evidence? Isn't her testimony competent evidence that the policy J exists? No, because when the Court asked for supplemental briefing on this issue, counsel opposite stated to the Court that Ms. Buchanan, in her affidavit, said that she received a copy of this policy in 2012. That is not what her affidavit says. Her affidavit says that she received a copy of the policy at some point at an unknown time when a training officer who had been removed by the time Ms. Buchanan had returned back on duty, he had been removed from the VA as a training officer for irregularities. And so, therefore, it cannot be assumed that somehow she received this policy in 2012. There is no statement of . . . She did not testify to the fact that she had received it in 2012, and there was no evidence to support that. Was there evidence to support that she had to receive it in 2012 because it was not a policy thereafter? Yes, there was evidence to that effect. Did she dispute that evidence? No, she did not dispute that evidence with credible evidence. The only thing she offered was that she got the policy from a gentleman who had already left the VA, who had already been removed, which means that she had to have gotten the policy at some point in the past. Okay, but the problem is this focus on 2012 came from the judge. Mr. Donaldson says there was no three-ring . . . He didn't even say there was no three-ring binder. He says everything is online, period. She says there was a three-ring binder there the whole time that we were trained on, the whole time, and Exhibit J was in it. The 2012 thing was the judge's interjection, but let me ask you something more fundamental than that point, and that is you're treating this as if somebody is proffering an exhibit at trial, the judge has to rule on whether it's admissible, and we give deference, abuse of discretion, all that. That's not the summary judgment rule. You've said, like, ten times that it has to be a confident summary judgment. That's not actually the rule. The rule is 56C that says a party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including affidavits, yada, yada. Then it says a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Not you didn't dot your I's already, just that you never could. And what evidence did you all put on that she never could get this document in evidence, never could establish it was 2012 or whatever by her sworn testimony? Your Honor, we put on the affidavit of Mr. Donaldson, but I would add that it is Ms. Buckhannon's duty and obligation to authenticate the document. No, it's not. Your Honor, I would like to offer. 56C. May I offer some case law on this particular issue? In King v. Illinois Central RR, the Fifth Circuit said that evidentiary rulings with respect to the admissibility of evidence where the court is to determine whether or not evidence would be admissible at trial. It has to be admissible at trial in order for it to be competent summary judgment evidence. Is it? Otherwise. The sentence is a party may object that the material cited cannot be presented in a form. I mean, this language changed over time. It used to be, as you said, and in state court it is, as you say, at least in my day in state court. But the current thing is cannot be presented, and I'm not seeing that here. I mean, it is, her testimony could be better, I guess, but Mr. Donaldson actually never says there's not a three-ring binder. He never says there was a policy of retesting and then it was changed in 2012, and so in 2012 that wasn't a policy. He just says everything's online. What he did say, though, Your Honor, is that that has never been the policy of the VA, and I would note that Exhibit J, Exhibit J has strikethrough marks through it. We don't, in every policy of the VA. And so that's actually important, right, because it's not 2012 doesn't matter. He's saying this never has been. So the 2012 and whether she got it in 2010, that's a red herring. The question is, is this document something she made up or is it real? And I'm not sure we have the answer to that, and that is, in my view, a very significant issue here. I'm not sure the judge had the answer because the judge focuses on this 2012 thing, which in my view is a red herring. Your Honor, I don't know that the judge focused on the 2012 thing. I think what the judge focused on was that this document was inherently unreliable, and when the judge gave Ms. Buckhand an opportunity to authenticate it, what she did was say that she received the document at some point in an earlier period of time from some gentleman, and she doesn't even indicate when the policy was in effect or anything to that effect. How does the 2012, how is it injected into the discussion? Counsel opposite injected it into the discussion. How is that? Because the argument was made that you have to demonstrate, in order to authenticate the document and show that it is relevant, you have to demonstrate that the document was in effect at the time that she took the test in 2012. So that was the district court's discussion. But counsel opposite argued before this court just now that she actually received a copy of the document in 2012, which is inaccurate, and she made other statements that are provably inaccurate that undermine her testimony and her credibility. So when a judge is looking at whether or not to admit this evidence, you have to consider the totality of the Exhibit J that is being offered. There was no date on it. Every policy from the VA has a date on it. There were strikethrough marks on it. There were misspellings throughout it. This document was not a reliable document. Only she produced it. She never asked, Your Honor, asked about the discovery issues. She never asked or moved to compel for discovery of Exhibit, to authenticate her Exhibit J. She only tried to, at first she tried to argue to the district court that the government gave her Exhibit J, and then we proved that that was demonstrably false, that she produced it herself. And she is the only person who has brought in Exhibit J. Okay. The district court at Record 1201 said she states that these SOPs were in a black three-ring binder. Even assuming this is true, Plaintiff still has not established that her Exhibit J represented police department policy at the time she failed to qualify in 2012. So it's the district judge that injects this 2012 point, even though no one else has said, Oh, there was a different policy in 2012 than 2010 or some other time. So the chronology, the time issue is first raised by the district court. And this is not a showing that it cannot be put in admissible form, that she cannot show that it was in 2012. So I don't think this complies with 56C. Your Honor, I would argue that it does. And, again, I would refer back also to another case where in Muniz v. Orr, where the Fifth Circuit again said that only after the court properly determines what is admissible summary judgment evidence, because the purpose of summary judgment is to It is 2000. The purpose of summary judgment is to test the ability of the plaintiff to sustain her burden at trial. What did Rule 56C say in 2000? Your Honor, I don't It hasn't changed a lot since then. It has changed a lot since then, Your Honor. But it has not changed in the respect that the court has an obligation to only consider admissible evidence. Otherwise, the plaintiff could offer hearsay, the plaintiff could offer all sorts of things. Yes, and actually they can. The question is can it be put in admissible form, not is it in admissible form? And that's actually a fairly important distinction, and it is a relatively recent, and I don't have the date in my head, but a relatively recent development. So this is kind of important because the whole point of summary judgment is not to be a gotcha. Trial can be a bit of a gotcha with putting on exhibits. Summary judgment is not supposed to be. Do you have anything else to offer on this? Because I don't want to beat it to death. Do you have anything else to show us that she cannot ever establish this as a 2012 policy besides Donaldson saying everything is online and her affidavit? Because her affidavit doesn't say it wasn't in 2012. She said that the reason you can't establish it is striking through and all that. Does that bear? Do you have anything else? That's my question. No, Your Honor. Okay. In addition to Exhibit J not being an exhibit that is admissible in the evidence, Your Honor, we would argue that with respect to her gender discrimination claim, Ms. Buchanan failed to establish that she was treated differently than a similarly situated male. In this regard, Ms. Buchanan offers five comparators. I'm sorry. I will discuss two of them. In particular, I'll discuss Gregory Maples and Claude Winn. With respect to the other three, McBowns, Patrick, and Bui, there was no evidence at all in the record that any of these individuals actually failed a firearms exam. With respect to Gregory Maples, he was not similarly situated to Ms. Buchanan because although he failed the firearms test at the same time that Ms. Buchanan did, he was put up for removal just like Ms. Buchanan, but he decided to resign before the removal process was complete, so that mooted the removal process. And this Court has said when one employee accepts a disciplinary action or a decision and the other one chooses not to, then that makes those employees not similarly situated.  Yes, Your Honor. In addition, Claude Winn is not similarly situated because he failed the exam two years after Ms. Buchanan did, and when he failed the exam, he was going to be put up for removal, but the director could not act on the proposal for removal because he submitted a request for a reasonable accommodation, which was granted by the Reasonable Accommodation Committee. So because of that, Mr. Winn is also not a comparator. With respect to Ms. Buchanan's retaliation claim, it is very important that the Court consider the issues related to the settlement discussion in context. The parties engaged in these discussions in an effort to resolve this case, if the Court decides that all of a sudden efforts to resolve a case, which the district court determined were in fact efforts to resolve the case, are going to be used against that party, that is going to stifle a party's efforts to resolve a case. And the Court well knows that any time anyone tries to resolve a case, they want to resolve everything related to that party. So the mentioning of her ability to the dismissal of her EEO claims was in an effort to resolve the case, and that is the only evidence that Ms. Buchanan offers. Your position is that any testimony or any conversation that is related to an attempt to settle the case is per se inadmissible as testimony against the settler or the settler. It's inadmissible to establish liability, Your Honor, which is what the plaintiff attempts to do. Now, what if this were made, and what it appears to me is it was made outside any settlement negotiations? I mean, the settlement negotiations started later because what was the man's name? Joe Battle had no authority whatsoever to settle the case, and I thought he denied that he had any authority to settle the case, and that these discussions preceded any formal settlement of the case. Now, why doesn't that come outside the purview of what is it related for? Because, Your Honor, the recitation of the facts is not exactly accurate. That's a good start. What happened is that Ms. Buchanan was issued a notice of removal. She came to the removal hearing, which occurred in August of 2012. She was there represented by Mr. Von Sims, who was not a union representative. He was her representative that she brought out. This is a gentleman that represents frequent VA personnel in disciplinary matters, but he is not a union representative. He doesn't work for the VA. Mr. Sims was there negotiating on her behalf, making her arguments with respect to the removal. They indicated that they wanted to settle the case. Mr. Battle indicated that he would be amenable to that, but any settlement discussions would have to go through the VA's counsel, and that is when you get to the issue where we had exchange of e-mails, where Ms. Buchanan and her representative, as well as her representative alone, were having discussions with Johnston Walker, who is the counsel for the VA, regarding her removal and settling the case. And Mr. Walker said that if we settle this, she has to release all of her pending claims against the VA, and that would include her EEO claim. It would resolve anything that she has against the VA. So, therefore, these discussions were definitely a part of settlement discussions. The point of settlement was brought up during the removal hearing that she requested before Mr. Battle. The parties ceased the removal hearing to allow them to have further discussions with Johnston Walker. And what was the purpose of the removal hearing? She had a right, in other words, she was advised that she was being terminated. Yes. And from that, she has a right to appeal to a removal hearing? Yes. Before Joe Battle, is that the only person who is the decider in the case? Yes, Your Honor, because there was a notice of removal, and so it wasn't that she had already been terminated. What they do is they issue a notice of removal, and she has the right at that point to then go before the center director, who is Joe Battle, who, by the way, had only come to the VA months before Ms. Buckhannon decided to take this test. Indeed, the acting chief Motley had only come to the VA the week that Ms. Buckhannon went to LHC. Okay, so then what happened? What is the purpose of this meeting? The meeting was for her to present her arguments as to why she should not be removed. Okay. And during the course of this, Mr. Von Sams, I would note, was the same person who represented Lorraine Hudson, who, after she was upped for removal, submitted a reasonable accommodation request. He brought up the subject. Her representative is the one that brought up the subject. Can we settle this? Yes, because he had helped Ms. Hudson with her reasonable accommodation request. But you didn't settle it? It wasn't a settlement because he helped her submit a reasonable accommodation request, which took it out of Mr. Battle's hand. But because he had assisted her in resolving the issue so that she would not be removed, he was trying to resolve it in favor of Ms. Buckhannon. And I would note that Mr. Von, we were able to find him throughout discovery, so the fact that counsel couldn't. But would you agree, and I know you disagree that she was entitled to a retest, but if she was entitled to a retest, then offering the retest in exchange for dropping the EOC claim is not an offer of valuable consideration. She was already entitled to it. If the parties believe that it was an offer of valuable consideration, these were settlement discussions. So for the court to then go in and say, well, we're going to say that that wasn't a really good settlement offer, that would wreak havoc on the process of the parties to settle. Okay. Well, that wasn't my question. I apologize, Your Honor. My question was whether if, in fact, she already had the right to retest, that offer of the right to retest then would not be valuable consideration. Not what did anybody think and what's the policy of 408, but is that valuable consideration if she already has a right to it? Your Honor, I believe that in this instance it would be valuable consideration simply because at that point she didn't believe that she had the right to retest. This only came up after the fact, that she started making the decision. Your answer is my answer, even though it's not an answer. Your Honor, thank you for your time. Thank you, Ms. Williams. Wolf. I thought I'd try to take this five minutes and address that which was only loosely addressed, and I will admit is our tougher of the two arguments, and that's the gender retaliation, gender discrimination. Again, this issue was dismissed in February of 2005 on the first motion for summary judgment file. And so at that time we have offered into it. 2005 or 2015? I'm sorry, 2015. Yeah, and in 2015 the court did admit in that decision that there was evidence both that she was a perfected class, even said there was evidence. Your problem counsel is others who are similarly situated. It's their requirement that poses a problem. That's the one issue here, and that's where we understand it's difficult, because we asked for copies of employees who had filed EEOC claims. We were denied those. We were looking on the outside, looking in. We even brought a motion to compel. We were unsuccessful. What we had in response. So you agree that the comparators you offered were insufficient to establish that they were similarly situated? No, I believe I have a difficult task, but let me point out why at least two of them are sufficient. Again, the standard here is whether or not we can bring potential evidence that they are to be considered. And again, I know this goes to the issue of abuse of discretion and the court determining these issues, and I know our task is high, but when we consider two out of the five or three out of the five male police officers that we offered in our affidavit of Alice Buchanan to the summary judgment, where she says that she identifies these officers who failed and were not terminated. They're male officers. We also have separate from all this evidence here is the admission by the VA that at least three and not more than seven other officers, employees, had failed the firearms tested, and in those same set of admissions they admit that Alice Buchanan is the only one who's ever been terminated as a result of the failure to file. Now, Alice Buchanan was a woman in a men's department. Three to seven others have failed. Only Alice Buchanan stands terminated for it. So the inference here is that there is something gender related. Beyond that, we can take and again. Oh, but somebody resigned when they were up for removal. That was Greg Maples who resigned. Someone else asked for an accommodation so that they could be assigned something when they didn't have to use a firearm and they got it. Well, that was Claude Winn, but guess what? He was returned directly to employment after his accommodation period passed, and he is now armed, carrying. And that is in the affidavit in the motion to reconsider. That information is included there because we weren't aware of Claude Winn's firearm holding status at the time. What we do know is that Claude Winn made a reasonable accommodation request. Alice Buchanan, during her informal hearing, is written down in the notes, says she requested this exact thing that Ms. Hudson had. Ms. Hudson was requesting reasonable accommodation. She was never given an opportunity at reasonable accommodation, so it calls very suspiciously this request for reasonable accommodations by Claude Winn. It makes them suspect. More importantly, in order, and again, in order. When you say she was never given an opportunity, did she request one and have it denied? She requested and nothing further was taken. And the policy of the VA says no magic language is required that the director or whoever is the authority needs to take any kind of indication of a reasonable accommodation request seriously and move it forward, so she never had an opportunity. More to the point, though, Alice Buchanan is a very strong person who believes coming out of this that she wanted to return to police work, so she is not trying to get out of testing. She is not trying to avoid work. She is not trying to do anything other than get a fair opportunity to do that. But in order to do that, you've got to pass that firearms test. That's right. There's no question she didn't pass it. Well, there's questions of fact. The firearms test is not just one event, but it involves a second and final attempt. More importantly, there's also testimony by Alice Buchanan, we understand the court rejected it and is not believing it to be credible, that she in fact, remember she scored 39 out of 40, the goal was 40, twice during three attempts in Little Rock, Arkansas. Now, her testimony is that she believed, and again, based on her experience, 10 years of passing this test before, ability to pass it after the fact, she believed that she put 40 rounds into that. And if folks have hunted or done any shooting before, a single round can deliver through the same spot. So there is a question of fact. Let me add this aside from that. When was the Exhibit J first mentioned in any of these proceedings by anybody? That's right. When? Okay. Was it after she was terminated? It was brought up during the discussions. It was brought up during the discussions at the informal hearing where she was asking for her second and final attempt. That much is clear. Wait a minute. It was brought up with her? And Joe Battle. With Joe Battle is when she first mentioned Exhibit J, whatever it is? Yes. She was requesting her second time. And the record will make that clear? It should. I would have to hunt it down to find specifics. If you have any dispute about that, Ms. Williams, you can just advise the court. In other words, in a letter, if you dispute that, just cite us to the record with copy to the clerk that where we will find when Exhibit J was first mentioned or brought up to the attention of anybody in the position of deciding the case. That's my understanding. I would also say this. No discovery was propounded by the VA upon us. Never once were they requesting a copy of any of the documents within our possession. It was also brought up at the Merit System Protection Board, so it was available to them before we ever filed the federal claim. So it certainly was part of it. But, I mean, I just never heard it. I understand it was brought up at that meeting. That's what I understand from the records. And to be clear, I don't know that they said this is the firearms protection specific site, but it certainly was her second. The first of the parts in the record that will clarify this. Thank you. Okay. Thank you very much. That concludes the cases that we have on the oral argument panel, and it actually concludes the cases before this panel. So a reconstituted panel will meet tomorrow morning at 9 a.m. Thank you.